UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CALVIN COOLEY,

                Plaintiff,                Case No. 2:15-cv-108

v.                                                    Honorable R. Allan Edgar

DEBORAH LOOP,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Calvin Cooley, a state prisoner currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Resident Unit Supervisor Deborah Loop, Corrections Officer Joe Cayer, Administrative Assistant Micki Sorenson, and Warden Kathy Olson. In his complaint, Plaintiff alleges that Defendants Loop and Cayer issued false misconduct charges against Plaintiff in retaliation for a grievance that Plaintiff had filed on Defendant Loop.

Plaintiff alleges that between March 26, 2015, and April 10, 2015, he received false major misconduct tickets from Defendants Loop and Cayer, which caused Plaintiff to worry about his chance of getting parole. In addition, Plaintiff was subjected to 46 days of sanctions, lost his job, was placed on phone restriction, was "made out to be mentally ill," and was placed in segregation. Plaintiff asserts that because his grievance preceded the conduct by Defendants Loop and Cayer, it is clear that they were motivated by a desire to retaliate against him. Plaintiff states that Defendants Sorenson and Olson conspired to cover up the misconduct of Defendants Loop and Cayer.

Plaintiff asserts that Defendants violated his right to be free from retaliation. In addition, Plaintiff claims that Defendants subjected him to defamation of character, false imprisonment, and emotional distress in violation of state law. Plaintiff seeks damages and equitable relief.

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants Loop and Cayer falsified misconduct tickets against him in retaliation for a grievance that he filed against Defendant Loop. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff filed a grievance on March 3, 2015, asserting that on January 29, 2015, he went to Defendant Loop's office to inform her that he had not been receiving the proper pay for the past six months. Defendant Loop stated that she only honored the level of pay desired by Plaintiff on a floor detail. Plaintiff quoted policy to Defendant Loop, but she merely ordered him to leave her office. *See* docket #1-1, p. 2 of 13. On March 26, 2015, Defendant Loop wrote a misconduct ticket on Plaintiff, charging him with insolence:

> While making rounds of the unit, prisoner Cooley 209985, approached me by the 41-44 cube. In a loud angry voice he stated to me from approximately three feet away with direct contact "YOUR BITCH ASS AIN'T GOING TO TELL ME TO CLEAN NO FUCKING FLOORS! FUCK YOU! FUCK THIS SHIT! FUCK YOUR PUNK ASS, YOU BITCH!" I attempted to de-escalate the situation with him to no prevail [sic], at which time I walked away from Cooley to the Officer's office. Cooley continued to yell profanities at me. I felt Cooley's words, actions, and behavior to be harassing, demeaning, and degrading. I felt alarmed by them as well.

*Id.*, 4 of 13. During the hearing, Plaintiff asserted that the misconduct was retaliatory. The hearing officer, Lieutenant John Waite, found Plaintiff guilty, stating that Defendant Loop was credible. *Id.*, p. 5 of 13.

On March 26, 2015, Defendant Cayer wrote a misconduct ticket on Plaintiff, charging him with disobeying a direct order:

> I told prisoner Cooley that I needed him to clean the edges around the exit door on the E Unit 41-80 wing. Prisoner Cooley replied, "No, you can clean it yourself." I then ordered prisoner Cooley to clean the edges after he came back from breakfast at approximately 0725 hrs. He again stated in a very loud tone of voice, "No you can clean it yourself, I quit!" Almost every time I try to talk to prisoner Cooley he yells in an excessive loud tone of voice. At no time did prisoner Cooley comply with my orders.

*Id.*, p. 6 of 13. Hearing Officer Waite found Plaintiff guilty of the misconduct, noting that Defendant Cayer was credible. *Id.*, p. 7 of 13.

On March 29, 2015, Defendant Loop wrote a misconduct ticket on Plaintiff, charging him with destruction or misuse of property:

> Prisoner Cooley 209985 allowed prisoners 78879 Harrington, and Maxlow 413134 to use his PIN/PAN approximately (61) times from 12/3/14 through 3/29/15 to call numbers 313-286-7063, 313-854-8319, 616-375-6986, 616-452-6517, 616-634-4398, and 616-827-0967. It should be noted Maxlow had his phone privileges restricted

> 11/20/14-1/19/15. At no time was Cooley authorized to allow another prisoner to use, borrow, or buy his PIN/PAN for any reason or to assist another prisoner in circumventing the policies and procedures in place for prisoner phone use.

*Id.*, p. 8 of 13. During the hearing, it was noted that Defendant Loop listened to a number of calls made using Plaintiff's PIN and that the voice on the phone did not belong to Plaintiff. In addition, when Defendant Loop spoke to prisoner Maxlow about this issue, he admitted he had used Cooley's PIN. Plaintiff denied making any calls on his PIN, but a printout of the PIN showed 60 calls between December 3, 2014, and March 29, 2015, for a total charge of $80.80. The Hearing Officer found Plaintiff guilty, noting that another prisoner would not have had access to Plaintiff's PIN without Plaintiff's consent. *Id.*, p. 9 of 13.

On April 10, 2015, Defendant Cayer wrote a misconduct ticket on Plaintiff for threatening behavior and insolence, stating:

> While talking to prisoner Cooley #209985 E-77L he started to yell in a very loud tone of voice, loud enough to disturb other prisoners in the area, "Stop Fucking with me you bitch." Prisoner Cooley then came out of his cell and started waving his arms with clenched fists and lunged towards this officer yelling once again, "Stop fucking with me you bitch." Prisoner cooley [sic] entered this officers [sic] space within approx. 3 feet with direct eye contact with this officer. Prisoner Cooley's words and actions were not injest [sic] but aimed to threaten this officer.

*Id.*, p. 12 of 13.

Plaintiff received a hearing on the misconduct on April 15, 2015, which commenced with the viewing of video, which showed Plaintiff coming out of his cell and lunging toward Defendant Cayer with clenched fists. *Id.*, p. 13 of 13. The "Reasons for Findings" section of the hearing report states:

> THREATENING BEHAVIOR: Prisoner Cooley lunged towards Officer Cayer with his fists clenched yelling "Stop fucking with me you bitch." on 4-1-15 [sic] at 1228 hrs. I find that this action by its very nature expresses an intent to physically harm the officer. Prisoner Cooley's statement that he only came out and gave ID is not believed because on the video he is clearly seen walking right up on the officer then leaning into the officer and if he just wanted to hand his ID as he claims he would have just walked up and reached out and would not have been right on top of the officer or leaning into him. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

*Id.*

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff has met the first prong of the test set forth in *Thaddeus-X*. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if

> temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

In this case, Plaintiff relies on the fact that he filed a grievance on Defendant Loop on March 3, 2015, prior to the misconduct tickets by Defendants Loop and Cayer. However, the court notes that the first of the misconduct tickets were written on March 26, 2015, more than three weeks later. Plaintiff fails to allege any further facts showing that the misconduct tickets were written because of his previous grievance.

In addition, Plaintiff was found guilty of each of the misconduct tickets following a hearing. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). For the foregoing reasons, the court concludes that Plaintiff's retaliation claims against Defendants Loop and Cayer are properly dismissed.

Finally, the Court notes that Defendants Sorenson and Olson were not involved in Plaintiff's misconduct tickets and that their only roles in this action involve the denial of administrative grievances or the failure to act. Defendants Sorenson and Olson cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).

To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising

issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 10/5/2015                              */s/ R. Allan Edgar*
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE